IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01189-WDM-KLM

GERALD SCHLENKER,

    Plaintiff,

v.

CITY OF ARVADA, COLORADO,
CHARLES J. HUMPHREY, in his individual capacity,
JOSEPH HERTEL, in his individual capacity,
KELLEY SHEEHAN, in his individual capacity,

    Defendants.
_____

**ORDER GRANTING RULE 35 EXAMINATION**
_____

This matter is before the Court on **Defendants' Hertel, Humphrey and Sheehan's Motion for Rule 35 Examination** [Docket No. 143; Filed March 26, 2010] (the "Motion"). Plaintiff filed a response to the Motion [Docket No. 155; Filed April 6, 2010]. The Motion, which has been filed under seal [Docket No. 161], is ripe for review. The Court has reviewed the case file, the pleadings, and is fully advised in the premises. For the reasons set forth below, the Motion is **GRANTED**.

**I. Background**

This case involves Plaintiff's allegations against the City of Arvada, Colorado, and the individual Defendants, who are police officers, pursuant to 42 U.S.C. § 1983. On May 25, 2008, Plaintiff asserts that he was sleeping at a friend's home when the officer Defendants entered the home without a warrant, interrogated him, and summoned

1

paramedics to examine him. Plaintiff further alleges that without his consent, he was detained on a gurney and later at a hospital and administered tests and medications. Plaintiff asserts that he was released from the hospital several hours later, and that the incident caused him to suffer "humiliation, severe emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses." *Scheduling Order* [#42] at 6.

Defendants contend that they entered the home legally in the course of searching for a suspect who had kicked through the front door and punched through a glass window of a nearby bar. *Id.* at 7-8. They further maintain that they came upon Plaintiff in the suspect's home and asked him "some background questions to determine if he could stay at . . . the home while [the suspect] was taken into custody." *Id.* at 8. Defendants contend that Plaintiff refused to stay at the home and "began to exhibit unusual behavior. Plaintiff also showed signs of intoxication." *Id.* Because the officers were concerned that Plaintiff "would try to get behind the wheel of a car or walk into traffic," they contend that they told him he could either stay at the suspect's residence or take a Breathalyzer test. *Id.* Defendants assert that when Plaintiff refused to stay put or to take the Breathalyzer test, they called paramedics. *Id.* at 9.

## II. Parties' Arguments Regarding a Rule 35 Examination

Defendants assert that Plaintiff has "placed his medical and mental health in controversy and that there is good cause for having [him] examined under Rule 35." *Motion* [#143] at 7-8. Based on the pleadings and Plaintiff's deposition, they assert that he has alleged unusually severe emotional distress so as to justify a Rule 35 mental examination. In particular, they rely on Plaintiff's allegations that his emotional distress is "on-going" as justification for the exam. *Id.* at 9-14. They further contend that his "pre-

2

existing psychiatric condition," as demonstrated by his mental health records and substantiated by a preliminary opinion of their psychiatric expert, "constitutes sufficient evidence to place 'in controversy' [Plaintiff's] mental condition because that condition may refute the cause of [his] current condition."  *Id.* at 15-17.

Plaintiff, on the other hand, contends that he "claims only 'garden variety' emotional distress damages for which Defendants are not entitled to a highly invasive Rule 35 examination of him." *Response* [#155] at 3.  Plaintiff further contends that Defendants seek the examination "to harass, embarrass, intimidate and further damage him in retaliation for having filed this lawsuit."  *Id.* at 3-4.  Plaintiff asserts that his "'pre-existing condition' is wholly unrelated to these proceedings," because he is not seeking "enhanced damages for his emotional distress in connection with an assertion that his pre-existing condition has been exacerbated by Defendants' conduct."  According to Plaintiff, he will not introduce the medical records relating to his "pre-existing condition" at trial, nor will he testify regarding that condition.  *Id.* at 19-22.  Finally, Plaintiff contends that the potential injury to him of a Rule 35 examination outweighs any benefit to Defendants, because his claims of emotional distress "explicitly include his distrust and fear of medical professionals resulting from Defendants' conduct . . . ."  *Id.* at 22-23.

### III.  Analysis

**A.    The Requirements of Rule 35**

Fed. R. Civ. P. 35(a) specifies that the court may order "a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner . . . on motion for good cause."

The federal courts have repeatedly addressed Rule 35 over the years, resulting in

3

development of a significant body of law interpreting the rule.  In general, cases relating to Rule 35 have focused on three issues:  (1) whether the party to be examined has placed his or her mental condition "in controversy," (2) whether the party seeking the examination has demonstrated "good cause" for it; and (3) a particularized review of the facts asserted by the proponent and opponent of the requested examination.  The genesis of this analytical framework was *Schlagenhauf v. Holder*, 379 U.S. 104 (1964), in which the Supreme Court construed the "in controversy" and "good cause" requirements of the Rule to be related, and to require more than a showing of mere relevance of the requested examination to the dispute at issue in the case.  *Id.* at 118.  Moreover, the Court held that the requirements of the Rule

> are not met by mere conclusory allegations of the pleadings . . . but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.  Obviously, what may be good cause for one type of examination may not be so for another.  The ability of the movant to obtain the desired information by other means is also relevant.
>
> . . . .
>
> . . . Mental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule.

*Id.* at 118, 121.

**(1)     The "In Controversy" Requirement**

Since the decision in *Schlagenhauf*, the courts have applied Rule 35 in light of its two explicit requirements and the "discriminating" analysis mandated by the Supreme Court.  Decisions addressing requests for mental examinations are frequently informed by the seminal holding of *Turner v. Imperial Stores*, 161 F.R.D. 89 (S.D. Cal. 1995).  In *Turner*,

4

plaintiff sought damages for the alleged wrongful termination of her employment as a cashier and sales clerk at defendant Imperial Stores, including for losses allegedly resulting from "humiliation, mental anguish, and emotional distress." *Id.* at 90. After canvassing the caselaw on Rule 35, the court noted:

> These cases suggest that courts will order plaintiffs to undergo mental examinations where the cases involve, in addition to a claim of emotional distress, one or more of the following: 1) a cause of action for intentional infliction or negligent infliction of emotional distress; 2) an allegation of a specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or 5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35(a).

*Id.* at 95. The court concluded that none of the circumstances mentioned above was present, and that therefore plaintiff's mental condition was not "in controversy" for purposes of Rule 35.

Courts have repeatedly cited *Turner* and agreed with its characterization of the specific facts and circumstances in which a plaintiff's mental condition is "in controversy" for purposes of Rule 35. *See, e.g.*, *Bowen v. Parking Auth.*, 214 F.R.D. 188, 193 (D.N.J. 2003) (holding that because plaintiff did not allege present, ongoing or permanent mental injury or disorder, Rule 35 exam not allowed); *Fox v. Gates Corp.*, 179 F.R.D. 303, 307-08 (D. Colo. 1998) (denying Rule 35 exam request based upon plaintiff's "garden-variety" claim for emotional distress, statement that she did not intend to offer expert testimony to support her claim and refusal to concede that her mental condition was "in controversy"); *O'Sullivan v. Minnesota*, 176 F.R.D. 325, 327-28 (D. Minn. 1997) (holding that complaint's "bare and boilerplate allegations of 'mental anguish,' 'emotional distress,' and 'embarrassment and humiliation,' provide[d] a legally insufficient basis" for concluding that

5

plaintiff's mental condition was in controversy or that good cause was shown for a Rule 35 exam); *Smith v. J.I. Case Corp.*, 163 F.R.D. 229, 230-31 (E.D. Pa. 1995) (finding combination of plaintiff's allegation of "embarrassment," submission of psychological services bills as compensable damages, defendant's unsupported contention that plaintiff's medication caused symptoms for which he was seeking compensation and plaintiff's admission of daily marijuana use insufficient to compel Rule 35 exam); *Williams v. Troehler*, No. 1:08cv01523, 2010 WL 121104, at *4-5 (E.D. Cal. Jan. 7, 2010) (unpublished decision) (holding that despite plaintiff's claimed memory loss, Rule 35 examination was not permitted because the circumstances listed in *Turner* were not present); *Kankam v. Univ. of Kan. Hosp. Auth.*, No. 07-2554-KHV, 2008 WL 4369315, at *4-6 (D. Kan. Sept. 23, 2008) (unpublished decision) (noting that careful review of plaintiff's deposition testimony resulted in conclusion that she had alleged only "garden-variety damages," not ongoing or future damages, such that Rule 35 exam unwarranted); *Jarrar v. Harris*, No. CV 07-3299, 2008 WL 2946000, at *1, 5-6 (E.D.N.Y. July 25, 2008) (unpublished decision) (denying Rule 35 exam request based upon plaintiff's allegations of "run-of-the-mill emotional distress" and the likelihood that plaintiff could "successfully litigate his claims without adducing expert testimony"); *EEOC v. Mahu Prabhu, Inc.*, No. 3:07-cv-111-RJC, 2008 WL 2559417, at *2-4 (W.D.N.C. June 23, 2008) (unpublished decision) (denying Rule 35 exam request based upon lack of claim of specific psychiatric injury, garden-variety nature of allegations of plaintiff's symptoms of emotional distress and availability of other tools of discovery to obtain information sought); *Phalp v. City of Overland Park*, No. 00-2354-GTV, 2001 WL 1717949, at *1-2 (D. Kan. Sept. 13, 2001) (unpublished decision) (ordering Rule 35 exam based upon plaintiff's claims of depression caused by defendant's wrongful conduct);

*LaFave v. Symbios, Inc.*, No. CIV.A. 99-Z-1217, 2000WL1644154, at *4-5 (D. Colo. Apr. 14, 2000) (unpublished decision) (denying Rule 35 exam request where none of *Turner's* five sets of circumstances present).

  **(2) The "Good Cause" Requirement**

Although the majority of the cases interpreting Rule 35 have analyzed the "in controversy" requirement for a mental examination, some have also discussed the factors which establish the "good cause" necessitated by the rule. *See, e.g.*, *Thiessen v. GE Capital Corp.*, 178 F.R.D. 568, 570 (D. Kan. 1998) (holding that because plaintiff's specific mental condition appeared to be "inextricably intertwined with the full story which [was] expected to unfold at trial," good cause found for Rule 35 exam); *Hodges v. Keane*, 145 F.R.D. 332, 334 (S.D.N.Y. 1993) (Sotomayor, D.J.) (finding that documentary evidence of plaintiff's previous mental health problems and expert affidavit that he probably still suffered from such problems provided good cause for a mental examination because they went "to the very heart of plaintiff's claims – namely the very existence of the alleged violations"); *Anson v. Fickel*, 110 F.R.D. 184, 186 (N.D. Ind. 1986) (noting that one of the factors to consider in determining good cause for the requested exam is whether the requesting party has utilized other discovery procedures relating to the relevant condition before requesting the exam); *Troehler*, 2010 WL 121104, at *4 ("Factors that courts have considered [to establish good cause] include, but are not limited to, the possibility of obtaining desired information by other means, whether plaintiff plans to prove his claim through testimony of expert witnesses, whether the desired materials are relevant, and whether plaintiff is claiming ongoing emotional distress."); *Bonner v. Normandy Park*, No. C07-962RSM, 2008 WL 624942, at *3 (W.D. Wash. Feb. 12, 2008) (unpublished decision) (finding that good

cause for Rule 35 exam was demonstrated by assertions that a party incurred ongoing mental or physical pain and suffering as a result of the wrongs alleged).

Moreover, at least one court has found good cause for a Rule 35 examination when alternative evidence regarding a plaintiff's mental condition was deemed to be insufficient to establish the extent of his claimed injuries. *Doe v. District of Columbia*, 229 F.R.D. 24, 27 (D.D.C. 2005) (allowing Rule 35 exam of 10-year-old plaintiff where pre-litigation mental examinations, medical records and depositions were insufficient for defendant to ascertain the nature and extent of the injuries that resulted from the incidents alleged in the litigation).

**B.     Rule 35 Examinations and Proof of Causation**

A third line of cases has justified Rule 35 mental examinations on the grounds that such exams are necessary to prove – or disprove – that the plaintiff's alleged emotional or psychological injuries were caused by the alleged wrongful conduct of the defendant. These "causation" cases consider the "in controversy" and "good cause" requirements of Rule 35 in light of the burden of showing whether the plaintiff's claimed emotional or psychological injuries resulted from the defendant's alleged wrongful conduct. The courts in these cases compel a Rule 35 mental examination when they conclude that proof of causation would be unduly difficult or incomplete without such an examination.

The rationale for the decision to allow mental examinations in these cases is that such an exam is warranted when it is likely necessary to determine whether the plaintiff's claimed emotional injuries resulted from the incidents at issue in the case, and/or whether the injuries resulted from independent causes, such as pre-existing or post-incident mental disorders. Manifestly, such cases involve serious scrutiny of the facts and evidence offered

by the parties. *See, e.g.*, *Womack v. Stevens Transp., Inc.*, 205 F.R.D. 445, 447 (E.D. Pa. 2001) (ordering Rule 35 exam where evidence existed that plaintiff's psychological problems could be causing his claimed injury of inability to work coupled with the lack of alternative means to determine plaintiff's psychological status); *Pozefsky v. Baxter Healthcare Corp.*, 194 F.R.D. 438, 439 (N.D.N.Y. 2000) (holding that possible nexus between plaintiff's physical symptoms and alleged psychological disorders justified compelling a Rule 35 exam, regardless that plaintiff withdrew her claim for emotional injury); *Hodges*, 145 F.R.D. at 335 (Sotomayor, D.J.) (holding that evidence that plaintiff suffered from "a mental condition that impair[ed] his ability to perceive and evaluate the actions of others" placed his mental condition in controversy, was relevant to issues of causation, and satisfied the good cause requirement of the rule); *Gepner v. Fujicolor Processing, Inc.*, 637 N.W.2d 681, 690 (N.D. 2001) (allowing Rule 35 exam based upon evidence that plaintiff was being treated for depression, had demonstrated "extreme pain behaviors" and "inappropriate illness behavior" on a work tolerance assessment, and had suffered a seizure which an emergency room physician believed could be related to "a psychological overlay/anxiety reaction").

A sub-category of the causation cases allows Rule 35 mental examinations when the evidence regarding the plaintiff's emotional injuries requires an expert determination of the cause or source of such injuries. For example, in *Greenhorn v. Marriott International, Inc.*, 216 F.R.D. 649, 651-52 (D. Kan. 2003), the court held that allegations of specific, detailed and particularized emotional injuries justified a Rule 35 exam, because "the average lay person may not be able to evaluate properly the nature, extent and cause of the injuries plaintiff claims to have sustained." *Cf. EEOC*, 2008 WL 2559417, at * 3-4

(noting that plaintiff alleged "no physical or mental condition requiring further investigation by a trained professional," such that there was "no good cause for an independent examination because a reasonable lay person would be able to understand [plaintiff's] symptoms of emotional distress").

## C. The Facts of this Case

### (1) Allegations of Plaintiff's Pleadings

Despite the Supreme Court's admonishment in *Schlagenhauf* against use of "mere conclusory allegations of the pleadings" as the basis for a Rule 35 examination, the pleadings are a logical starting place for analyzing the allegations made about Plaintiff's emotional distress in this case. In the Complaint and First Amended Complaint, Plaintiff asserts that he "has suffered *and continues to suffer* humiliation, *severe* emotional distress, loss of enjoyment of life, and other significant injuries . . . ." *Complaint* [#1] ¶ 52; *First Amended Complaint* [#70] ¶ 53 (emphasis added). Plaintiff asserts eight separate claims against the officer Defendants for alleged violation of his constitutional rights pursuant to 42 U.S.C. § 1983, and seeks "compensatory damages, including . . . those for *future* . . . non-pecuniary losses, emotional pain, suffering, mental anguish, [and] loss of enjoyment of life . . . ." *First Amended Complaint* [#70] at 35 (emphasis added). As part of his request for equitable relief, Plaintiff seeks "provision of appropriate psychological and/or therapeutic counseling." *Id.* at 36. The Scheduling Order, as drafted by Plaintiff's counsel, repeats the allegations that Defendants' alleged actions caused him to suffer "*severe* emotional distress" and his request for damages for "past *and future* pecuniary and non-pecuniary losses, emotional distress, suffering, . . . mental anguish [and] loss of enjoyment of life." *Scheduling Order* [#42] at 6, 23 (emphasis added). These allegations make clear that

10

Plaintiff not only contends to have suffered severe emotional distress, but also that such distress is ongoing.

### (2) Allegations of Defendants' Pleadings

Defendants repeatedly assert that Plaintiff's behavior on the night of the incident at issue was "strange." *Motion* [#143] at 2. The officer Defendants contend that when they told him they were leaving the residence but that he could stay, he "became agitated and stated that he was going to leave . . . and refused to explain why." *Id.* They also assert that he answered their questions in an "unusual way," by stating "Sir, no, Sir" or "Sir, yes, Sir." *Id.* (Indeed, Plaintiff also answered questions this way throughout his deposition. *See, e.g.*, *Exhibit C* [#143-1] at 159, ll. 12-14; 160, ll. 10-24; 162, ll. 6-24; 175, ll. 2-24.) The individual Defendants assert that when they asked Plaintiff whether he was in the military, he responded that it was none of their business. *Motion* [#143] at 2. Defendants contend that Plaintiff admitted he had been drinking alcohol on the night of the incident, but refused to take a Breathalyzer test or to call a family member or friend so that the officers could allow him to leave the suspect's home. *Id.* at 2-3. He refused to answer when asked whether he was on medication or had taken any drugs. *Id.* at 3.

Defendants assert that when the paramedics arrived, they found Plaintiff to be a poor historian and to provide inconsistent answers. He refused to have his vital signs taken and accused the paramedic of not using clean gloves. When the paramedic offered to put on new gloves while Plaintiff watched, he "still refused to be evaluated." *Id.* The paramedics determined that Plaintiff exhibited "resistive behavior, difficulty focusing on questions, irrational and tangential speech, and an agitated affect." *Id.* at 3-4. Once Plaintiff arrived at the hospital, Defendants contend that the emergency room physician

11

"diagnosed him with combative behavior and paranoid ideation and determined he needed to be evaluated by a mental health professional. He was described as uncooperative and delusional by nursing staff." *Id.* at 4. Plaintiff refused to eat or drink, refused to allow medical personnel to remove his IV when he was being discharged, refused to call a friend or family member to give him a ride home, and "refused to put on hospital issued slippers or booties (he did not have socks or shoes) because he was worried about his safety." *Id.*

### (3) Discovery

In his answers to written discovery, Plaintiff stated that as a result of the incident, he continues to fear the Arvada police and to suffer from stress to the extent that he has difficulty participating in volunteer work "anywhere in Arvada" and that he no longer visits friends who live in Arvada because he is "too fearful of going anywhere in Arvada." *Exhibit B* [#143-1] at 10-11.

In his deposition, Plaintiff testified that he is "scared about the retaliation that will come about about [sic] this case. I don't sleep well at night even in my own home." *Exhibit C* [#143-1] at 160, ll. 13-15. He said that his emotional stress has gotten more severe over time, and that he "keep(s) checking the door, just in case they come in." *Id.* at 162, ll. 4-5. He asserted that he has suffered from sleep problems continuously from the incident, and that those problems have increased over time. Specifically, he contends that he sleeps with one eye open, that he "maybe" gets two hours of sleep per night, that he "constantly look[s] at the door [and he] even slept by it a few times," and that some nights he gets no sleep. *Id.* at 162-63, ll. 14-3. He stated that he refuses to go into the City of Arvada, and that he "go[es] around if [he] has to." *Id.* at 163, ll. 14-18. As a result of the incident, not only does he currently refuse to visit his friends, but he has lost trust in people and his

12

mistrust has increased over time. *Id.* at 163, ll. 13; 164, ll. 6-25; 175-76, ll. 21-2. Plaintiff testified that he has turned down jobs taking care of pets and as a handyman or doing yard cleanup because he "[doesn't] want to be out in the world where some bad person can do it all over again." *Id.* at 176-77, ll. 24-6.

Plaintiff stated, during his deposition, that he currently refuses to receive any type of medical treatment because he "[won't] trust a doctor ever again." *Id.* at 336-38, ll. 24-21. He indicated that the incident at issue was more traumatizing to him than not having any contact with his two younger children for the past several years, *Id.* at 348, ll. 7-14, and more frightening than breaking his back in two places, being determined to be completely disabled and not working. *Id.* at 348-49, ll. 23-2. Plaintiff testified about observing his former wife verbally abuse their children during the last five years of their marriage, and that the incident at issue was significantly more emotionally upsetting to him. *Id.* at 451-52, ll. 1-8.

Finally, Plaintiff's prior medical records suggest that he may suffer from adjustment disorder, affective disorders, somatoform disorders, a thought disorder, and/or a personality disorder, mixed, with schizoid and dependent features. *Exhibit F* [#143-3 at 5]. Dr. Jeffrey Metzner, a psychiatrist who reviewed Plaintiff's medical records, videotaped deposition and the depositions of the police officers, has offered a preliminary opinion that "it is likely that [Plaintiff] suffered from, and may still suffer from, a mental condition that impairs his ability to perceive and evaluate the actions of others." *Exhibit G* [#173-1] ¶ 4.

### D. Application of Law to Facts

I am particularly mindful of Plaintiff's contention that this case centers around allegations of violations of his privacy, and that compelling a Rule 35 mental examination

may cause him to suffer even greater harm than he has already allegedly incurred at the hands of Defendants. *See Response* [#155] at 22-23. However, I do not conclude that the applicable law regarding Rule 35 mental examinations mandates that the Court balance a plaintiff's personal privacy interest against the interest of a defendant in defending against allegations of wrongful conduct. Nevertheless, even if such a balancing were required, under the circumstances present here the scale tips in Defendants' favor.

By way of background for the analysis which follows, I note that the parties agree that Plaintiff's behavior during the incident in question is central to the case, that it has been interpreted very differently by the parties, and that the damages he seeks relate primarily to his emotional distress. In addition, the parties do not dispute that Plaintiff may only recover for the "additional increment" in his pain and suffering which was caused by the incident at issue, and not for any which relates to a pre-existing condition. *See, e.g.*, *Richardson v. Mo. Pac. R.R.*, 186 F.3d 1273, 1278 (10th Cir. 1999)*; Stevens v. Bangor & Aroostook R.R.*, 97 F.3d 594, 601-03 (1st Cir. 1996). At this stage of the litigation, it appears that apportionment of Plaintiff's pain and suffering incurred as a result of this incident by a lay jury may be difficult, if not impossible. Moreover, Plaintiff's mental condition "appears to be inextricably intertwined with the full story which is expected to unfold at trial." *Thiessen*, 178 F.R.D. at 570*.* These unique facts and circumstances form the context in which the need for a Rule 35 mental examination must necessarily be adjudicated.

I find that the record here supports the need for a Rule 35 mental examination of Plaintiff. He has placed his mental condition in controversy because he has alleged severe emotional distress. *See Turner*, 161 F.R.D. at 95. His own description of his extreme post-

incident fear, caution, suspicion and emotional suffering leaves little doubt that he contends that the incident at issue deeply and irretrievably affected him. Moreover, he has testified that he views the incident as more traumatic than other manifestly difficult emotional events he has experienced in his life. Thus, from both an objective and a subjective viewpoint, his mental condition is in controversy in this case. *See id.*

Defendants have shown good cause for a Rule 35 mental examination, for the following reasons. First, Plaintiff is clearly claiming ongoing emotional distress. *See, e.g.*, *Troehler*, 2010 WL 121104, at *4-5. Second, in light of his admitted refusal to undergo post-incident medical treatment (*Exhibit C* [#143-1] at 159, ll. 5-22; 163, ll. 4-9; 314, ll. 2-7; 338, ll. 2-21), there appears to be no other means to obtain evidence about his mental condition as a result of the incident. *See Troehler*, 2010 WL 121104, at *4-5; *see also Doe*, 229 F.R.D. at 27. Third, evidence of Plaintiff's mental condition is not only relevant to the subject matter of the litigation, but is the axis on which it turns. Every critical disputed fact of this case revolves around whether Plaintiff was accurately perceiving the events at issue, or whether his observations, reactions and judgment were somehow impaired. Defendants have adduced sufficient evidence to demonstrate that proof of whether Plaintiff's emotional distress was caused by the incidents at issue is likely to be significantly enhanced by expert testimony. Under these circumstances, a Rule 35 examination is proper. *See, e.g.*, *Hodges,* 145 F.R.D. at 335; *Jarrar*, 2008 WL 2946000, at *5-6.

Accordingly, it is hereby **ORDERED** that Defendants' Motion for Rule 35 Examination is **granted**. Dr. Jeffrey Metzner shall conduct the examination on a date and at a time and location as agreed upon by the parties, but prior to June 30, 2010. The scope

and manner of the examination shall be as reasonably determined by Dr. Metzner as necessary to allow him to offer an expert opinion on the following: (1) emotional distress suffered by Plaintiff as a result of the incident at issue in the litigation, (2) pre-existing and/or underlying psychiatric conditions that would have affected Plaintiff's behavior during the incident at issue, and (3) whether Plaintiff's emotional distress is causally related to the incident at issue. The examination shall be completed in no more than six (6) hours.

**IT IS FURTHER ORDERED** that the discovery deadline is extended to June 30, 2010 for purposes of completing the Rule 35 examination.

Dated: June 2, 2010

                                          /s/ Kristen L. MIx
                                          Kristen L. Mix
                                          United States Magistrate Judge